## 47019. HALL v. THE STATE.
(383 SE2d 128)

CLARKE, Presiding Justice.

This is a death penalty case. Willie James (Bo) Hall was convicted of murder and burglary. He was sentenced to death for the

murder. We affirm.[1]

"Bo" Hall and his wife Thelma had a tumultuous marriage. On July 5, 1988, Thelma moved in with a friend, Valeria Hudson. That weekend, Hall was observed by several persons lurking near Hudson's apartment. On Sunday evening, July 10, Hall told his wife's sister that he was looking for Thelma. He stated, "I am gonna kill her," and predicted, "I couldn't get no more than ten years."

On Monday morning, July 11, a 911 operator received a call from Thelma. This call was tape-recorded. The recording was played at trial. Thelma reported that someone was "trying to break in the house." The 911 operator obtained her address and asked her if she knew who it was outside her house. She responded that she did not think so. Immediately afterward, the operator heard the sound of breaking glass and then listened to Thelma Hall's final words:

No . . . Stop, stop, stop Bo . . . stop it
Stop it, stop it
Bo stop it, stop it the police are on the way
Please, Bo, quit it
Bo, stop
Bo, stop it please
Bo, stop it
Bo, stop, stop it
Stop it . . .
Please Bo, please stop
Stop it
Oh God
Stop Bo
Bo, please, please
Bo please
Bo, Bo stop
Stop Bo please
Oh God . . . Oh . . .

The police arrived within minutes and discovered Thelma Hall's body. She had been stabbed 17 times, including a series of stab wounds in a pattern about the neck like a "necklace." Two shoe prints matching the defendant's were found on the scene along with several of his fingerprints.

1. Hall first contends the voir dire examination was overly restrictive. He contends the trial court erred by disallowing defense questions about the recent Ted Bundy execution and about a local radio

---

[1] The crime was committed on July 11, 1988. Hall was indicted on September 12, 1988; he was convicted and sentenced to death on February 3, 1989. A motion for new trial was filed February 8, 1989 and denied March 30, 1989. The case was docketed in this court May 4, 1989. Oral arguments were heard June 27, 1989.

call-in show dealing with the meaning of the life imprisonment sentence, and contends the court erred by refusing to allow him to ask prospective jurors to specify "a reason" that would warrant a sentence less than death.

There was no error. The scope of the voir dire examination is left largely to the discretion of the trial judge. The examination here was "broad enough to allow the parties to ascertain the fairness and impartiality of the prospective jurors." *Curry v. State*, 255 Ga. 215, 218 (336 SE2d 762) (1985). It is not error to exclude questions not dealing directly with the specific case on trial. *Chastain v. State*, 255 Ga. 723 (1) (342 SE2d 678) (1986). Moreover, it is not proper "to ask a juror to describe the *kind* of case that, in the juror's opinion, would [or would not] warrant a death sentence. . . . [Cit.]" *Blankenship v. State*, 258 Ga. 43, 45 (6) (365 SE2d 265) (1988).

2. During closing argument of the sentencing phase of the trial, the district attorney argued:

> You may think of an analogy in certain ways about the way people sometimes felt about DUI's twenty years ago, oh, well, you know, no big deal, we will reduce it down and give a little warning. That's not the way it is anymore. And that is not the way it should be with domestic violence. . . . But let me just ask you to think that perhaps in some way in the future the public may feel somewhat the same about domestic violence as they now do about . . . vehicular homicides. Let us all hope that the public feels that way, and if it deters one person, it is worth it. . . . I am asking you to deliver a message.

Hall contends these remarks impermissibly referred to matters outside of evidence and were an invocation of prosecutorial expertise.

It is not error to refer during closing argument to matters " 'within the common knowledge of all reasonable people.' [Cit.]" *Brooks v. Kemp*, 762 F2d 1383, 1408 (11th Cir. 1985). Thus the district attorney's analogy to DUI cases was not improper. Nor can it be viewed as an improper invocation of prosecutorial expertise. The prosecutor was entitled to impress "upon the jury the enormity of the offense and the solemnity of their duty in relation thereto." *Patterson v. State*, 124 Ga. 408, 409 (52 SE 534) (1905). See also *Walker v. State*, 254 Ga. 149, 159 (327 SE2d 475) (1985).

3. At the hearing on the motion for new trial, a paralegal for Hall testified that she had interviewed ten of the twelve jurors. She stated that two jurors claimed they had been convinced to change their vote from a sentence of life imprisonment to the death penalty because "other jurors in the juror room informed [them] that there was no

such thing as life imprisonment without parole."

Hall argues that there was, in effect, an intentional gathering of extrajudicial evidence that was communicated to other jurors, and that this alleged misconduct falls within the exception to the rule that jurors cannot impeach their own verdict. See *Watkins v. State*, 237 Ga. 678, 683-85 (229 SE2d 465) (1976).

In *Watkins*, two jurors had conducted an independent, unauthorized visit to the crime scene, and had reported their findings to the other jurors. The state contends that no such extrajudicial investigation or communication occurred here, and contends this case is controlled by *Aguilar v. State*, 240 Ga. 830 (1) (242 SE2d 620) (1978). We agree.

In *Aguilar*, three of the jurors gave post-trial affidavits stating

> they had believed [the defendant] guilty of voluntary manslaughter, but agreed to a murder conviction because one of the jury stated that voluntary manslaughter probably would not give him enough punishment.

Id. at 831. Aguilar relied unsuccessfully upon *Watkins* to support his claim of jury misconduct. We disagreed, observing:

> What goes on in the jury room is a complicated weighing process, in which the final unanimous verdict is merely the resultant of numerous competing forces. See generally H. Kalven & H. Zeisel, The American Jury (1966). Our statute . . . prohibits the jurors from impeaching their verdicts. . . . The purpose of the statute is plainly to prohibit after-the-fact picking at the negotiating positions of the jurors and of their attempts to persuade one another.

Id. at 832.

The events in this case do not fall within any exception to the rule that "affidavits of jurors may be taken to sustain but not to impeach their verdict." OCGA § 17-9-41. Accord *Ashby v. State*, 607 SW2d 675 (Ark. 1980); *State v. Cherry*, 257 SE2d 551, 560-61 (N.C. 1979). The trial court did not err by denying Hall's motion for new trial on this ground.[2]

4. The jury found the presence of two statutory aggravating circumstances to support the death sentence for the murder of Thelma Hall: (1) "The offense of murder was outrageously and wantonly vile,

---

[2] In view of our holding, it is not necessary that we decide whether, as the state contends, the defendant's evidence was hearsay or whether, as the defendant contends, the state waived any hearsay objection to the testimony of the defendant's paralegal.

horrible and inhuman in that it involved torture, depravity of mind and aggravated battery to the victim," and (2) "The offense of murder was committed while the offender was engaged in the commission of a burglary." See OCGA § 17-10-30 (b) (7) and (b) (2). The evidence supports these findings. OCGA § 17-10-35 (c) (2).

5. The death sentence was not imposed under the impermissible influence of passion, prejudice, or other arbitrary factor. OCGA § 17-10-35 (c) (1). Nor is it excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case.

*Judgment affirmed. All the Justices concur, except Hunt, J., not participating.*

## APPENDIX.

*Jefferson v. State,* 256 Ga. 821 (353 SE2d 468) (1987); *Davis v. State,* 255 Ga. 598 (340 SE2d 869) (1986); *Roberts v. State,* 252 Ga. 227 (314 SE2d 83) (1984); *Berryhill v. State,* 249 Ga. 442 (291 SE2d 685) (1982); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Bowden v. State,* 239 Ga. 821 (238 SE2d 905) (1977); *Young v. State,* 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975).

DECIDED SEPTEMBER 11, 1989.

*Tony L. Axam,* for appellant.
*Robert E. Wilson, District Attorney, James W. Richter, Eleni Ann Pryles, Assistant District Attorneys, Michael J. Bowers, Attorney General, Andrew S. Ree,* for appellee.

