S94A0285. GARDINER v. THE STATE.
S94A0286. LUCCI v. THE STATE.
S94A0287. JONES v. THE STATE.
(444 SE2d 300)

THOMPSON, Justice.
Kenneth Eric Gardiner, Dominic Brian Lucci and Mark Jason

---

Jones were jointly indicted, tried and found guilty of malice murder in the shooting death of Stanley Jackson, and of possession of a firearm in the commission of a felony.[1]

1. Each defendant challenges the sufficiency of the evidence. The three defendants were Army servicemen stationed at Fort Stewart, Georgia. Earlier on the day of the shooting, Jones approached a fellow serviceperson on base and asked to borrow certain heavy duty gear used for military maneuvers. She declined. They went on to discuss Jones' plans for the weekend. He told her that he was going to Savannah that night because "he had somebody that he was going to shoot." When asked who, he replied, "I got a black guy up there I got to get." She urged him to avoid trouble and warned him of the possibility of getting caught. He responded, "[t]he object is to not get caught."

Shortly after 10:00 p.m. that night, an eyewitness to the shooting heard rapidly repeating gunfire and observed a black, 1992 Chevrolet Cavalier automobile come to a screeching halt at the intersection of East Broad and 33rd Street in Savannah. He observed two caucasian men, later identified by him as defendants Gardiner and Jones, leaning out of the front and rear passenger windows firing guns. The car then sped away. A third person was driving. The body of the victim was found lying in the intersection. He died as a result of multiple gunshot wounds inflicted by a high-powered weapon such as an AK-47.

Within minutes of the shooting, a police officer in the vicinity was dispatched to the scene. As he approached the area, a black car turned onto East Broad ahead of the police vehicle and proceeded toward the crime scene. The two vehicles stopped at the perimeter of the crime scene, whereupon Jones exited the black car, approached the officer and asked for directions to Club Asia. Two men remained in the car. According to the officer, they were acting "very strange" and "fumbling around" as if "they were hiding something."

The three defendants were observed together by various other witnesses in the vicinity and at the time of the shooting. Between 9:45 and 10:30 p.m. they were denied admission to a nightclub in Savannah because Jones was underage. Between 10:00 and 11:00 p.m. they approached a uniformed off-duty police officer working security at a

---

[1] The crime occurred on January 31, 1992. Defendants were indicted on April 29, 1992, tried on November 9, 10, 12, 13, 16-19, 1992, and found guilty as charged on November 19, 1992. Defendants were each sentenced on November 20, 1992 to life imprisonment for murder plus five consecutive years for possession of a firearm during the commission of a crime. Motions for new trial were filed on November 24, 1992, and amended on June 14, 1993. The motions were denied on August 27, 1993. Notices of appeal were filed on September 24, 1993, and the appeals were docketed on November 29, 1993. Oral argument was heard by the Court on February 15, 1994.

nearby supermarket and asked directions to Club Asia. One of the defendants advised the officer to "check into" a shooting which had just taken place down the street.

They approached another officer outside the local police barracks and again asked directions to Club Asia. This officer was in the process of escorting the eyewitness into the station for questioning. As the suspects drove off, the witness informed the officer, "That's the car that was over on 33rd Street . . . That's them . . . You're fixing to let them get away." The witness was taken to the Club Asia parking lot where he identified the Chevrolet Cavalier as the car occupied by the shooters. The three defendants were apprehended together in the club.

While being questioned on the night of the shooting, Jones inquired about the condition of any victims and told the investigating officer, "if I [had] shot them they'd be dead."

While in custody, Jones asked his cellmate, "What if [we were] riding in the same vehicle . . . and I take a gun . . . I'm gonna scare this guy, and point at his feet . . . and if the bullet ricochet[s] and hit[s] them, is that murder or is that an accident?"

Fellow serviceman testified that Gardiner and Lucci were preoccupied with a fantasy role-playing game called Dungeons and Dragons, in which a team of assassins plot to kill people. Lucci professed to be a weapons expert and kept six or seven throwing knives in his car. He would often drive a black Chevrolet Cavalier which belonged to a friend. Gardiner owned such a car. Upon learning that a colleague on base was listed as a witness for the state, Lucci warned him: "Well, what I'm going through right now, you don't know what might happen to you or your family."

The evidence against Lucci was circumstantial.[2] The eyewitness testified that three perpetrators were involved. Gardiner and Jones were identified as the shooters and a third unidentified person was the driver of the black car. The three defendants were seen together by various witnesses in close proximity to, and within a short period of time of the shooting. Lucci was identified in the company of Gardiner and Jones at the first nightclub, by the officer at the supermarket, by the officer at the police station, and finally at Club Asia. The proved facts were consistent with Lucci's guilt and inconsistent with any reasonable theory of innocence.

The evidence against Gardiner and Jones was both direct and cir-

---

[2] OCGA § 24-4-6 provides:
To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused. The jury in this case was so instructed.

cumstantial. The jury was authorized under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find all three defendants guilty beyond a reasonable doubt of the offenses for which they were convicted. Defendants' motions for directed verdicts of acquittal were properly denied.

2. Defendants assert that the trial court erred in refusing to consider the post-verdict affidavits of several jurors offered to demonstrate instances of alleged juror misconduct during the course of the trial.

The general rule is that "affidavits of jurors may be taken to sustain but not to impeach their verdict." OCGA § 17-9-41. Exceptions have been carved:

> where extrajudicial and prejudicial information has been brought to the jury's attention improperly, or where non-jurors have interfered with the jury's deliberations. See, e.g., *Hall v. State*, 259 Ga. 412 (3) (383 SE2d 128) (1989) and cases cited therein.

*Spencer v. State*, 260 Ga. 640, 643 (3) (398 SE2d 179) (1990).

The jurors' affidavits advance the complaints that: (1) Juror Golden commented on the guilt of the defendants from the outset of the trial contrary to the court's instructions; (2) juror Golden was personally familiar with family members of the victim and with certain witnesses and conversed during the trial with the victim's father who later testified as a witness for the prosecution; (3) certain jurors did not understand instructions regarding reasonable doubt; (4) certain jurors had concerns about their personal safety and the possibility of racial unrest in the community in the event of an acquittal; (5) certain jurors were concerned about the length of the trial and therefore were not impartial; and (6) juror Cooper, an attorney, provided legal information which unfairly influenced other jurors.

The trial court was notified of juror Golden's conduct prior to the commencement of deliberations. After an inquiry in the presence of counsel, defendants were offered an additional peremptory strike which they exercised to remove juror Golden and substitute an alternate. Any prejudice to defendants with respect to this juror's conduct was cured with approval of all counsel.

The court carefully considered the content of the affidavits and correctly determined that they did not fall within an exception to the rule against impeachment of verdicts for any of the reasons advanced. See *Spencer*, supra at (3); *Hall v. State*, 259 Ga. 412 (383 SE2d 128) (1989); *Hill v. State*, 250 Ga. 277 (7) (295 SE2d 518) (1982). It was therefore not error to refuse to allow an evidentiary hearing on the motions for new trial to consider further evidence in determining the

admissibility of the post-verdict affidavits.

3. Defendants contend that a new trial was required based on evidence that certain jurors committed perjury during voir dire. Any asserted error with respect to juror Golden is waived by defendants' acquiescence in the curative procedure implemented by the trial court.

It is further asserted that juror Cooper failed to disclose during voir dire that his brother was at the time under indictment for murder. The court obtained and took judicial notice of the record of the prosecution against juror Cooper's brother and concluded that he was then an unindicted suspect in an investigation. In order to obtain a new trial, defendants must show that the juror failed to answer honestly a material question and that the correct response would have provided a valid basis for a challenge for cause. *Isaacs v. State*, 259 Ga. 717, 741 (44) (e) (386 SE2d 316) (1989). See also *Gainesville Radiology Group v. Hummel*, 263 Ga. 91 (428 SE2d 786) (1993), reiterating the rationale of *Isaacs*. The trial court correctly concluded that defendants failed to carry that burden.

4. The trial court did not abuse its discretion in denying defendants' motions for change of venue.

Defendants have not demonstrated that the atmosphere surrounding the trial was so inflammatory that they could not receive a fair trial in the community. The majority of pre-trial publicity was generated immediately after the shooting; the trial was held approximately ten months thereafter. The jurors were questioned extensively during voir dire concerning the impact of pre-trial publicity on their ability to decide the case impartially. As the trial court observed at the conclusion of the voir dire, "I know of no juror who has said that they would be influenced by [pre-trial publicity], nor is there any indication that they would." Defendants have not made a " 'substantive showing of the likelihood of prejudice by reason of extensive publicity' [cit.]," *Fugate v. State*, 263 Ga. 260 (7) (431 SE2d 104) (1993), as to render a fair trial in the community impossible. See also *Lemley v. State*, 258 Ga. 554 (4) (372 SE2d 421) (1988); *Chancey v. State*, 256 Ga. 415 (5) (349 SE2d 717) (1986).

5. Defendants claim that the court erred in refusing to allow expert testimony regarding the reliability of eyewitness identification. The court properly exercised its discretion in concluding that the information sought from the witness is within the knowledge of the jury and is not a proper subject for expert opinion testimony. *Norris v. State*, 258 Ga. 889 (1) (376 SE2d 653) (1989).

6. Defendants specify a series of evidentiary rulings which they claim resulted in the admission of irrelevant and prejudicial testimony. We find no abuse of discretion. Any claim that the evidence impermissibly placed their character in evidence was not asserted be-

low and will not be considered. See *Hunter v. State*, 202 Ga. App. 195 (413 SE2d 526) (1991). The court properly allowed the jury to decide the weight and credibility of a cellmate's testimony concerning admissions made by Jones while asleep. See *Diaz v. State*, 262 Ga. 750 (3) (425 SE2d 869) (1993), and cases cited therein.

7. Lucci complains of the denial of his motion to sever his trial from that of his co-defendants.

Severance of defendants is discretionary with the court in a case where the death penalty is waived. OCGA § 17-8-4. "The burden is on the defendant to show clear prejudice and in the absence of this showing the trial court's denial of the motion to sever will not be disturbed." *Satterfield v. State*, 256 Ga. 593, 596 (3) (351 SE2d 625) (1987). Factors to be considered in exercising that discretion are:

> "whether a joint trial will create confusion of evidence and law; whether there is danger that evidence implicating one defendant will be considered against another defendant despite cautionary instructions to the contrary; and whether the co-defendants will press antagonistic defenses. [Cit.]"

*Brown v. State*, 262 Ga. 223 (2) (416 SE2d 508) (1992).

Lucci maintains that certain unspecified inculpatory statements made by Jones and Gardiner were improperly admitted against him in violation of *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). However, the constitutional confrontation problem in *Bruton* was not present here since none of the inculpatory statements made by Jones or Gardiner implicated Lucci. Cf. *Brown v. State*, 262 Ga. 223 (416 SE2d 508) (1992); *Hicks v. State*, 262 Ga. 756 (1) (425 SE2d 877) (1993). Lucci has not shown the requisite prejudice resulting from the joint trial which would warrant reversal. See *Satterfield*, supra.

8. Defendants allege certain instances of prosecutorial misconduct. We have reviewed these allegations and find them to be without merit.

9. Defendants contend that the court erred in failing to enforce a subpoena directed to the Mayor of Savannah to appear as a witness at trial in an effort to show that the prosecution was politically motivated. The court deferred ruling on a motion to quash concluding that the Mayor had not been properly served with the subpoena. Since defendants did no more to perfect this claim of error, there is nothing to review. See generally *Dover v. State*, 250 Ga. 209 (4) (296 SE2d 710) (1982).

10. Defendants assert that the state's failure to reveal the existence of a homemade pipe found in the victim's clothing constituted a *Brady* violation. Assuming arguendo that the evidence was exculpa-

tory and material, it was documented in the state's file, which was made available to defendants prior to trial, and it was ultimately produced at trial. No *Brady* violation occurred. *Dennard v. State*, 263 Ga. 453 (4) (435 SE2d 26) (1993).

*Judgments affirmed. All the Justices concur.*

DECIDED JUNE 13, 1994 —
RECONSIDERATION DENIED JULY 7, 1994.

*John C. Watts, Sr., John C. Watts, Jr.,* for Gardiner and Jones.
*William O. Cox,* for Lucci.

*Spencer Lawton, Jr., District Attorney, David T. Lock, Gregory M. McConnell, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Assistant Attorney General,* for State.