## A02A0592. IRWIN COUNTY v. OWENS.
(568 SE2d 578)

PHIPPS, Judge.

Patricia Owens sued Irwin County, alleging that without her permission, the County had constructed a wide road across her property, dug deep ditches alongside the road, and destroyed numerous trees and bushes. The County claimed ownership of the strip of land under theories of implied dedication and prescription. A jury found in favor of Owens and awarded her damages, litigation expenses, and attorney fees. The County appeals,[1] contending that it should have been allowed to open and close arguments to the jury, that the evidence demanded a verdict in its favor, that damages, litigation expenses, and attorney fees should not have been awarded, that its motion for mistrial based on a comment by Owens's attorney during closing argument should have been granted, and that its motion for new trial should have been granted. Finding these contentions without merit, we affirm.

The evidence at trial showed that in April 1998, Owens purchased a 98.95-acre farm in Irwin County. A path ran across the farm, and a "private property" sign was posted at the path's entrance onto the farm. Owens testified that "it was just a little path that you could get a pickup truck through, and the trees and bushes were so close . . . the trees at the top, their limbs touched each other and almost completely shaded this little path all the way through."

In May 1998, Owens discovered that a grader had been on the path. Her husband called the district's county commissioner, who assured him that the County would not be back. A few days later, Owens called the Chairman of the Irwin County Commissioners, who told her that the person who farmed property that adjoined hers had requested better access to a "back field." Without having made any effort to determine who owned the property, the chairman had sent county workers to work on the path. Although he assured Owens during their telephone conversation that the County would not be back, the next day, county workers returned, uprooted trees, "skinned" pine trees, widened the path, and dug deep and wide

---

[1] The County filed its appeal in the Supreme Court, which transferred the case to this court.

ditches alongside it. The disturbed land varied in width from 24 feet to 47 feet.

In support of its claim of ownership of the path through dedication and prescription, the County presented the testimony of community members who stated that at various times they had used the path to, among other things, walk to church, access crop fields, reach softball fields, and truck fertilizer to nearby fields. Also, a retired county motor grader operator testified that he had graded the path during the mid-1970s.

But, contrary to the County's position, a former county commissioner who had served the district that included the property from 1989 through 1996 testified that the path had not been considered a public road and was not incorporated into the system of county roads. He testified that during his tenure, the County had done no work on the road except that once, at a farmer's request, it had "pushed a little dirt" where the road had "washed." A former chairman of the commission, who served from 1981 to 1989, testified that the road had not been considered a public road and that the County did no work on the road, except once filling a mud hole at the request of a farmer. Further, the person who sold the farm to Owens testified that she had owned the land since 1983 and that the path was not a public road.

1. The County contends the trial court erred in not allowing it to open and conclude closing arguments. But the County was required to make a motion in this regard "before testimony by the other party was submitted."[2] Because the record shows that the County failed to make its motion timely, the trial court did not err in denying it.

2. The County contends that the trial court should have granted it judgment as a matter of law on its motions for a directed verdict and for judgment notwithstanding the verdict on the issues of implied dedication and prescription.

> In determining whether the trial court erred by denying [the County's] motion[s] for a directed verdict and motion[s] for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.[3]

---

[2] (Citation and punctuation omitted.) *Magnan v. Miami Aircraft Support*, 217 Ga. App. 855, 859 (6) (459 SE2d 592) (1995); *Intl. Indem. Co. v. Coachman*, 181 Ga. App. 82, 90 (6) (351 SE2d 224) (1986).

[3] (Citation omitted.) *Wolf Camera v. Royter*, 253 Ga. App. 254, 255 (1) (558 SE2d 797) (2002).

(a) To show that property has been dedicated, two criteria must be established: (1) the owner intended to dedicate the land for public use; and (2) the public accepted the dedicated property.[4] Although there was no evidence that the path had been expressly dedicated to the County, the County claimed that there had been an implied dedication and acceptance of the path for public use. "When an implied dedication is claimed, the facts relied on must be such as to clearly indicate a purpose on the part of the owner to abandon his personal dominion over the property and to devote it to a definite public use."[5]

Here, the County relied on evidence that members of the community had used the path for various purposes and that county workers occasionally graded it. However,

the mere use of one's property by a small portion of the public, even for an extended period of time, is not sufficient to authorize an inference that the property has been dedicated to a public use, unless it clearly appears that there was an intention to dedicate, and that this dedication was accepted by the public authorities, either in express terms or by implication resulting from the maintenance of a way public in its nature.[6]

The County produced no evidence regarding which owner had abandoned personal dominion over the property. Moreover, the testimony of a previous owner and former commissioners was competent evidence that there had been no implied dedication. Although it appears that the County had at some time periodically graded the path, "by permitting public authorities to occasionally scrape and grade a private road, a property owner does not manifest an intention to dedicate the roadway."[7] Furthermore, the County proffered no evidence that it maintained the path as a county road open for public use. Thus, the evidence did not demand a finding that the path had been impliedly dedicated to and accepted by the County as a public road.[8]

(b)

In order to obtain prescriptive rights over a roadway, the possession must not originate in fraud, must be public, continuous, exclusive, uninterrupted, peaceable, and accompa-

---

[4] *Chandler v. Robinson*, 269 Ga. 881, 882 (1) (506 SE2d 121) (1998).

[5] (Punctuation and footnote omitted.) Id. at 883.

[6] (Citation omitted.) *Childs v. Sammons*, 272 Ga. 737, 738 (1) (534 SE2d 409) (2000).

[7] (Footnote omitted.) *Chandler*, supra at 882.

[8] See *MDC Blackshear, LLC v. Littell*, 273 Ga. 169, 171-172 (1) (537 SE2d 356) (2000); *Chandler*, supra at 882-883; *Childs*, supra.

nied by a claim of right. The use must also be adverse rather than permissive, and in the case of public roads acquired by prescription, public authorities must have either accepted the road or exercised dominion over it. Lastly, there must have been unlimited public use of the roadway for at least the seven years preceding the claim of prescriptive acquisition.[9]

The evidence in this case did not demand a finding that the County accepted the path or exercised dominion over it. Nor did it demand a finding that public use of the path was accompanied by a claim of right or that it was adverse, rather than permissive. And although the County may have made some repairs to the path, there is no evidence that it did so with the intent to own it. The trial court did not err in denying the County's motions on the issue of prescription.[10]

3. The County contends that the trial court erred in not granting its motion for directed verdict and motion for judgment n.o.v. on the issue of damages claimed by Owens. But it has failed to provide citation as to where in the record it made those motions, and we cannot find them. However, evidence was presented of the value of the destroyed trees and the costs to fill the ditches with dirt and grade the path, which allowed the jury to determine the amount of compensatory damages to a degree of reasonable certainty.[11] Moreover, the verdict was within the range of the evidence as to damages. This contention is without merit.

4. The County contends that the trial court erred in denying its motion for mistrial because of a statement by Owens's attorney during closing argument. He argued, "We can't exist in a society where government can just dominate little people. We've got a constitution. And they can't come kick your door down in the middle of the night, law enforcement, and just search your premises without just cause. Although I hear even that's been done (inaudible)." The County's attorney moved for a mistrial, complaining that the remark improperly referenced matters not relevant or in evidence. The court overruled the motion, but instructed the jury, "Please wipe that from your minds in its entirety."

It is not error to refer during closing argument to matters within common knowledge.[12] The trial court did not abuse its discretion in

---

[9] (Footnotes omitted.) *Chandler*, supra at 883 (2); OCGA § 32-3-3 (c).

[10] *Chandler*, supra at 884.

[11] See generally *CSX Transp. v. West*, 240 Ga. App. 209, 212-214 (4) (523 SE2d 63) (1999).

[12] *Hall v. State*, 259 Ga. 412, 414 (2) (383 SE2d 128) (1989).

denying the County's motion for mistrial based on the analogy by Owens's attorney to illegal government intrusions.[13]

5. Irwin County contends that the trial court erred in denying its motions for directed verdict and judgment n.o.v. on the issues of litigation expenses and attorney fees. Owens sought such awards under OCGA § 13-6-11, alleging that the County had acted in bad faith and had caused her unnecessary trouble and expense. Questions of bad faith and unnecessary expense under that Code section are generally for the factfinder.[14] We will affirm an award of attorney fees and expenses if there is any evidence to support it.[15]

In this case, the County sent a work crew to widen the path and otherwise disturb the area without ascertaining the owner of the property. Had the County attempted to determine whether it had a right to do such work, it likely would have discovered that Owens had a claim to the land. Despite notice of Owens's claim of ownership and the County's promises that it would not return to the property, the County continued to widen the path, destroy trees, and dig ditches. Such actions supported a finding that the County had acted in bad faith and had put Owens to unnecessary trouble and expense.[16] The trial court did not err in denying the County's motions.

6. Finally, the County contends that the trial court erred in denying its motion for new trial on the ground that the amount of damages returned in the jury's verdict was contrary to the evidence. If there is some evidence to support a jury's verdict, we will not disturb the denial of a defendant's motion for new trial.[17] This issue was considered and resolved adversely to the County in Division 3. The trial court did not err in denying the County's motion for new trial.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JULY 3, 2002.

*Mixon & Mixon, Warren L. Mixon*, for appellant.

*Reinhardt, Whitley, Wilmot & Summerlin, Glenn Whitley*, for appellee.

---

[13] See id.

[14] *Oglethorpe Power Corp. v. Sheriff*, 210 Ga. App. 299, 300 (3) (436 SE2d 14) (1993).

[15] *MDC Blackshear*, supra at 174 (5).

[16] See *Dept. of Transp. v. Edwards*, 267 Ga. 733, 737 (1) (c) (482 SE2d 260) (1997); *MDC Blackshear*, supra; *Oglethorpe Power*, supra.

[17] *CSX Transp.*, supra at 210.