In the Supreme Court of Georgia

Decided: November 17, 2014

S14A1327. WASHINGTON v. THE STATE.

MELTON, Justice.

Following a jury trial, Bryant Washington was found guilty of malice murder, two counts of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.[1] On appeal, Washington argues that the trial court made several errors regarding the introduction of identification testimony and that trial counsel

---

[1] On December 11, 2009, Washington was indicted for malice murder, two counts of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Following a jury trial, Washington was found guilty on all counts, and, on September 3, 2010, he was sentenced to life imprisonment for malice murder, five consecutive years for possession of a firearm during the commission of a felony, and five consecutive years for possession of a firearm by a convicted felon. The felony murder verdicts were vacated by operation of law. Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993). On September 9, 2010, Washington filed a motion for new trial, which he amended on March 15, 2013. The motion for new trial was denied on July 22, 2013. Thereafter, Washington filed a timely notice of appeal, and his case, submitted for decision on the briefs, was docketed to the September 2014 Term of this Court.

rendered ineffective assistance. For the reasons set forth below, we affirm.

1. In the light most favorable to the verdict, the record shows that, on September 2, 2008, Jeffrey Lawrence, the victim, was living in an apartment with his brother, Charles Lawrence, and their friend, Darnell Hudson. That day, Monica Taylor, the mother of Hudson's child, was visiting the apartment. At approximately 11:00 a.m., a man known as "Slim" or "Old Man Ron" came to the apartment with the intention of purchasing drugs from Charles Lawrence and Hudson. Slim was accompanied by three other men, one of whom was wearing a yellow hat and a yellow shirt and had a New Orleans accent. After walking in and out of the house several times, the man in the yellow hat came inside, pulled out a gun, and told everyone to "lay it down." He then opened fire and shot Jeffrey Lawrence in the head, ultimately killing him. Charles Lawrence responded by firing a gun back, and he and Hudson chased the man outside of the apartment. Later, when investigating the scene, police recovered a yellow hat from the bushes in front of the apartment, and DNA on the hat was a match for Washington, who is originally from New Orleans.

To further the investigation, police created a photo lineup containing Washington's picture, and both Charles Lawrence and Taylor identified

2

Washington. In both instances, the police officer administering the lineup read Charles Lawrence and Taylor the admonition located on the back of the photo lineup,[2] he did not tell either witness whether they had made the correct choice, and he did not threaten them. Prior to Taylor's identification of Washington, however, the police officer told her that they had discovered someone's DNA at the scene and had a suspect.

This evidence was sufficient to enable the jury to find Washington guilty of the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Washington contends that the trial court erred by allowing Steve Berne, Charles Lawrence's attorney, to testify regarding the manner in which the photo lineup was presented to Charles Lawrence. Specifically, Washington contends that Berne bolstered Charles Lawrence's testimony. We disagree.

It is improper to allow one witness to testify regarding the veracity of another. See Bly v. State, 283 Ga. 453, 459 (3) (660 SE2d 713) (2008) ("a

---

[2] Although neither witness properly signed the identification card to attest that the admonition had been read, both witnesses and the administering officer testified that the admonition was read prior to the identifications being made.

witness ... can never bolster the credibility of another witness as to whether the witness is telling the truth") (citation and punctuation omitted). That, however, is not what happened in this case. Instead, Berne, who was present during the photo lineup, testified that (1) detectives read Charles Lawrence an admonition prior to the lineup; (2) Charles Lawrence was neither pressured nor instructed whom to choose; (3) Charles Lawrence immediately chose Washington; and (4) detectives did not inform Charles Lawrence that they had Washington's DNA. Contrary to Washington's arguments, Berne's testimony did not directly comment on the credibility of Charles Lawrence's testimony. As a result, the admission of Berne's testimony was proper.

3. Washington argues that the trial court improperly limited the questioning and testimony of his expert witness, Dr. Jeffery Neuschatz, regarding the specific photos used by police in the photo lineup shown to Charles Lawrence and Taylor.

The record reveals that the trial court indicated to Washington's trial counsel that it would be improper to question the defense expert about the specific photographs used in the lineups shown to Taylor and Charles Lawrence. Trial counsel responded that she had no intention of discussing the photo lineup.

4

The trial court then said "since you are not going to go there, that's fine then."

Both the trial court's ruling and trial counsel's reaction to it were proper. In

Johnson v. State, 272 Ga. 254, 257 (2) n.3 (526 SE2d 549) (2000), we

explained:

> While an expert may offer an opinion, based on the facts surrounding an individual eyewitness' identification when posited in the form of a hypothetical question, as to whether scientific research has established a likelihood of unreliability for identifications derived from comparable facts, an expert is not authorized to express his or her opinion regarding the credibility or trustworthiness of any individual eyewitness. An eyewitness' personal ability to identify another person is a matter to be explored exclusively on direct and cross-examination of that witness.

Therefore, while Washington's expert could have been and actually was posed

hypothetical questions, direct questions specifically related to the photos in the

lineup were appropriately excluded. As a result, Washington's additional claim

that trial counsel rendered ineffective assistance by acquiescing in the trial

court's ruling must fail. See, e.g., Hayes v. State, 262 Ga. 881, 884 (3) (c) (426

SE2d 886) (1993).

4. Washington maintains that the trial court erred by denying his request

to charge the jury regarding the failure of police to follow appropriate

procedures. Specifically, Washington asked the trial court to charge the jury as

follows:

> A failure on the part of the Atlanta Police Department or its agents to conduct scientific tests or to otherwise follow standard procedure during a police investigation is a factor you may consider in evaluating the evidence presented in this case. With respect to this factor, you should consider three questions: (1) Whether the omitted actions were standard procedure or steps that would otherwise normally be taken under the circumstances; (2) Whether the omitted tests or actions could reasonably have been expected to lead to significant evidence of the defendant's guilt or innocence; and (3) Whether the evidence provides a reasonable and adequate explanation for the omission of the actions. If you find that any omissions in the investigation were significant and not adequately explained, you may consider whether the omissions tend to affect the quality or reliability of the evidence presented by the State. Alternately, you may consider whether the omissions tend to show the existence of police bias against the defendant in conducting the investigation. All of these considerations involve factual determinations that are entirely up to you, and you are free to give this matter whatever weight, if any, you deem appropriate based on all of the circumstances.

It is well-settled that a requested "jury instruction must be adjusted to the evidence and embody a correct, applicable, and complete statement of law." (Citations and punctuation omitted.) Roper v. State, 281 Ga. 878, 880 (644 SE2d 120) (2007). As pointed out by the trial court, Washington's requested instruction is argumentative, and it provides no legal basis for its conclusions. When asked to provide a legal basis, trial counsel conceded that she had none.

6

As a result, the trial court did not err denying the request to use this instruction. Id. In any event, the trial court's charge, when considered as a whole, thoroughly instructed the jurors on the manner in which to view and weigh the evidence with which it had been provided.

Judgment affirmed. All the Justices concur.