A97A1827. McDILDA v. BOARD OF COMMISSIONERS OF
BULLOCH COUNTY et al.
(497 SE2d 25)

SMITH, Judge.

John McDilda appeals from two rulings entered in the Superior Court of Evans County in a case brought against him by the Boards of Commissioners of Evans County and Bulloch County to enjoin him from placing obstacles across a road that runs through his property. McDilda challenges the trial court's ruling that the road is a public road and its ruling that the location of the road is as depicted on a survey presented by the counties. This appeal was filed in the Supreme Court and transferred to this Court upon the Supreme Court's finding that the grant of equitable relief is ancillary to the two issues of law presented in the rulings. We find that the trial court correctly determined both issues, and we affirm.

1. McDilda contends the trial court erred in finding that neither Bulloch County nor Evans County had officially abandoned the road. He maintains that the portion of the road that crosses his land is private property for two reasons: First, neither county had maintained the road since 1981 and it had become practically impassable. Second, he asserts that in 1990, Bulloch County took official action pursuant to OCGA § 32-7-2 (b) (1) to abandon the road, and that Evans

County did so in 1993. McDilda argues that as a result of these official actions, neither county was authorized to reopen the road to the public without using its power of eminent domain and paying him just compensation.

(a) Since the formation of Evans County in 1914, a portion of the road in issue has formed the boundary line between Evans and Bulloch Counties. McDilda bought his property in 1992. Since approximately 1990, when a prior landowner built a pond dam, water has backed up onto the road where it crosses McDilda's property. Because of the water, the condition of the road had deteriorated and neither county had maintained it. The county would not be authorized to abandon the road because of disuse when that disuse was occasioned by the county's failure to comply with its duty to maintain and repair it. *Cherokee County v. McBride*, 262 Ga. 460, 461 (421 SE2d 530) (1992).

At times, "road closed" signs and barricades were placed on this portion of the road at the direction of Bulloch County to protect the public. A Bulloch County official testified, however, that these signs were temporary and that it was not unusual for the county to place signs and barricades on roads that washed out. The signs and barricades were never in place for long and were left there only until the county decided how to address the problems on the road. Despite the placement of such signs and barricades, the road continued to be used, at least by farm equipment. Even McDilda acknowledged that the road continued to be traveled. It is therefore clear from the record that the road did not become private property because it was impassable and was abandoned by virtue of the two counties' failure to maintain it.

(b) OCGA § 32-7-2 (b) (1) provides: "When it is determined that a section of the county road system has for any reason ceased to be used by the public to the extent that no substantial public purpose is served by it, the county, by certification recorded in its minutes, accompanied by a plat or sketch, and, after notice to property owners located thereon, after notice of such determination is published in the newspaper in which the sheriff's advertisements for the county are published once a week for a period of two weeks, and after a public hearing on such issue, may declare that section of the county road system abandoned. Thereafter, that section of road shall no longer be part of the county road system and the rights of the public in and to the section of road as a public road shall cease."

That portion of the statute requiring publication and a public hearing was added by amendment in 1994. Ga. L. 1994, p. 294, § 1. In 1990, when McDilda alleges Bulloch County took official action to abandon the road, and in 1993, when he alleges such action was taken by Evans County, those two requirements were not in effect.

Nevertheless, before its 1994 amendment, the statute still required that certain formalities be complied with in order for a county to abandon a road officially: a plat or sketch must have been attached to the minutes and notification provided to all property owners. The record shows not only that no official action was taken to close the road in issue, but that these required formalities were not satisfied.

In addition, the Chairman of the Bulloch County Board of Commissioners testified that since he had become a commissioner in 1990, no official action had been taken to close the road. Indeed, the minutes of the Bulloch County Board of Commissioners reflect several discussions and motions concerning the road, but they also reflect that no official action was taken to abandon it. The Board received a request to close the road in November 1990, discussed closing the road, and approved a motion to begin the process subject to legal requirements, but that process was never completed. At the very next meeting any action was tabled pending contact with Evans County representatives.

No further action was taken until July 20, 1993, when the Chairman informed the Board that the Evans County Attorney had requested that the two counties take joint action to close the road. He advised that the same request was received three years earlier but no action had been taken. The Chairman informed the Board that he would prefer that Evans County take action first, and that if Evans County took action the matter would be on the next meeting agenda. In November 1993, the matter was again discussed without official action being taken. In December 1993, the matter was again brought up for consideration by the Board. After discussing a petition protesting closing the road, the commission voted to table any further action.

Several months later, McDilda appeared before the Board to request that the road either be closed or maintained. After some discussion, it was decided that the county engineer would survey the road and present an estimated cost for maintaining it. This was done, but no action resulted. In August 1994, the Bulloch County Engineer reported to the Board that Evans County had voted to keep the road open, and he planned to meet with Evans County officials to discuss its maintenance. In April 1995, the Board was informed that McDilda had dug a ditch and put up a fence to prevent the public from traveling around the pond, and the Board was informed that this legal action had been filed. It is apparent from the minutes that the Board did not follow its usual practice, when officially closing a road, of presenting a "County Road Abandonment Certification"; it is likewise apparent that the Board took no official action to close or abandon the road.

The minutes of the Evans County Board of Commissioners

reflect similarly that no official action was taken by the Board to close the road. In 1990, the Evans County Board of Commissioners discussed the desire of certain of its citizens to have the road closed, as well as the decision of Evans County and Bulloch County to advertise in the newspaper to see if any objections existed. The issue was discussed again in October 1993. After discussion, a motion was passed stating that the county attorney would do the "legal work" on the road and that the commissioners would make the policy decision.

It is true that notwithstanding the limited nature of the motion approved by the full Commission, on October 11, 1993, W. V. (Billy) Moore, Chairman of the Evans County Board of Commissioners, executed a resolution that the road be closed. But Moore exceeded his authority in doing so. The resolution, in fact, acknowledges that the Board had merely "discussed" closing the road.

Since the commission as a body has the authority to decide matters "establishing, altering, or abolishing of all roads . . . in conformity to law," OCGA § 36-5-22.1 (a) (3), and no local law had been enacted delegating this authority to the Commission Chairman acting alone, see OCGA § 36-5-22.1 (b), Moore was without authority to execute a resolution closing the road. "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." OCGA § 45-6-5. Our courts have adhered to this principle "for over a century. [Cits.]" *City of Atlanta v. Black*, 265 Ga. 425, 426 (457 SE2d 551) (1995). The citizens of Evans County cannot be estopped, therefore, by the action of the Commission Chairman in executing an unauthorized resolution.[1]

Because the road was not abandoned in practice and neither county took proper official action to abandon it, the trial court did not err in ruling that the road remained a public road.

2. In its order finding that the road was a public road, the trial court ordered the counties to submit to the court a survey of the road in order for the court to determine its exact location. The order provided "[t]hat should [McDilda] disagree with the location of said roadway, that he shall thereafter file objections thereto which will create a question of fact for a later determination and/or compensation should the trier of fact so find that any portion of [McDilda's] property has been so taken over and above the necessary width

---

[1] Nor can they be estopped by the unauthorized actions of the then-county attorney in soliciting and obtaining from McDilda a fee for the "legal work" involved in closing the road. The fee was unauthorized, and although the county attorney stated in his letter to McDilda that the road would be closed for the sole benefit of McDilda, such a closing of a public road for the benefit of a private individual is impermissible. *McIntosh County v. Fisher*, 242 Ga. 66, 67-68 (247 SE2d 863) (1978).

which shall require compensation."

The counties submitted to the court the survey performed on October 12, 1995, by Timothy Eason, a registered Georgia surveyor. The court then ordered McDilda to submit his objections to the survey within 30 days, stating that in the absence of an objection, the Eason survey would be determined to be the correct location of that portion of the road. Within the time allotted, McDilda filed a document captioned "Objection to Submission of Survey Pursuant to Order of Court." Several months later, the counties filed their motion for summary judgment on this issue. Attached to the motion was an affidavit from the surveyor outlining the work he did, the information he considered in performing the survey, and stating his opinion, based upon personal knowledge, that the survey accurately sets forth the actual use of the road. Also attached were affidavits from an Evans County Commissioner and the Evans County Road Department Foreman, in which they both stated they were familiar with the road, including its location and use, had reviewed with the surveyor information regarding the location and actual use of the road, had reviewed the survey and plat prepared by the surveyor, and had found the survey to be an accurate reflection of the road's actual use and location.

McDilda's response to the motion for summary judgment alleged various objections to the methods used by the surveyor, including his failure to rely on old surveys. McDilda attached his own affidavit and those of adjoining property owners and neighbors, in which each states that, in his opinion, the survey performed by Eason does not accurately reflect the old road that was traveled by the public, but that Eason merely made a plat of the graded roadbed by staking off nine feet from the centerline of the road.

The hearing originally set on the motion was continued to give McDilda time to properly respond to the motion. In a document captioned "Respondent's Supplemental Response to Petitioner's Motion for Summary Judgment," McDilda recites that he had employed the services of a registered surveyor to research old surveys and records regarding the road, that the surveyor, Joe Davis, prepared a plat showing the old road, and that Davis's affidavit and the plat of survey prepared by him were attached to his response. The record, however, fails to contain either Davis's new survey or his affidavit. Instead, it contains only a drawing of the road made in 1986 by Davis. That drawing was not properly authenticated, and it contains the disclaimer that it is not a boundary survey.

It was McDilda's burden, as the respondent on the motion for summary judgment, to come forward with evidence showing that the counties were not entitled to judgment as a matter of law regarding the location of the road. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405

SE2d 474) (1991). McDilda having presented no competent evidence showing a location of the road different from that survey prepared by Eason at the direction of the counties, the trial court did not err in granting the counties' motion for summary judgment on this issue.

*Judgment affirmed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 11, 1998.

*Dubberly & McGovern, Joseph D. McGovern, Holloway & Associates, Strickland Holloway, Jr.,* for appellant.

*Franklin, Taulbee, Rushing, Bunce & Brogdon, James B. Franklin, Wilson, Brock & Irby, Kenneth D. Jones, Barbara J. Nelson,* for appellees.