A02A0102. HARBOR COMPANY v. COPELAN.
(567 SE2d 723)

PHIPPS, Judge.

This dispute involves the ownership of a six-inch strip of land in Greene County that separates property owned by The Harbor Company (THC) from a county road. THC sought injunctive and declaratory relief to establish that it had the right to use the strip to access the county road, even though respondent Jesse Copelan, Jr. held legal title to the strip. After a bench trial, the trial court denied the requested relief, finding that THC had no right to use the strip. THC appeals, arguing that Copelan is estopped from denying it access to the strip and that Greene County acquired the strip from Copelan through prescription. We disagree and affirm.

The record shows that in 1990, Copelan owned Tracts 6 and 7 in the Harbor Club, a gated residential community. On September 20, 1990, he conveyed the tracts to Harbor Club, L.P. (LP) via warranty deed. The deed did not precisely describe the property, but incorporated by reference two survey plats showing that the tracts were bordered on the north by a 28-foot-wide right-of-way for Club Drive, a public road.

The same day, Copelan conveyed to Greene County via warranty deed the piece of land called Club Drive that, according to survey plats, bordered Tracts 6 and 7 on the north. This deed also contained

no precise description of the property, but referred to a survey plat showing a 27-foot-wide right-of-way for the road.

Thus, the plat associated with LP's deed showed that the right-of-way for Club Drive was one foot wider than shown on the plat associated with Greene County's deed. A former employee of LP testified that the reason for this discrepancy was to allow Copelan to retain title to a six-inch strip on either side of Club Drive. The trial court found that Copelan retained the strip on the south side of Club Drive "specifically for the reason of preventing direct access from Tracts 6 and 7 to Club Drive and forcing access to them to be through the security gate of the Harbor Club gated community, thereby increasing the value of these lots." The court further found that because of this strip, Tracts 6 and 7 do not abut Club Drive.

Department of Transportation records show that the blacktop portion of Club Drive is 26 feet wide, not including the curbs and gutters. The curbs and gutters, which were built in 1990, measure approximately two feet on each side.

In April 1995, after one or more intervening conveyances, THC purchased Tracts 6 and 7 from Imogene Thomas, who is not a party to this action. As with the 1990 deeds, THC's deed incorporated by reference the same survey plats showing that Tracts 6 and 7 were bordered by a 28-foot right-of-way for Club Drive. The trial court found that before purchasing Tracts 6 and 7, THC learned that Copelan owned the six-inch strip of land and that there was no direct access from Tracts 6 and 7 to Club Drive. The court further found that THC did not purchase Tract 6 or 7 in reliance on any representation by Copelan, who was not involved in the 1995 conveyance.

THC seeks direct access to Club Drive from Tracts 6 and 7. At trial, THC stipulated that Copelan holds title to the six-inch strip between the tracts and the south side of Club Drive. THC argued, however, that Copelan was equitably estopped from denying it access to the strip and that Greene County had acquired the strip through prescription. The trial court rejected both arguments, finding that neither THC nor Greene County has any right to use the strip.

1. Ordinarily, a claim of equitable estoppel requires proof that the defendant falsely represented or concealed material facts with the expectation that the plaintiff would rely on the misrepresentation or concealment.[1] In addition, the plaintiff must show that it lacked knowledge of the true facts and changed its position prejudicially in reliance on the defendant's conduct.[2]

THC acknowledges its inability to prove a traditional estoppel

---

[1] See *Medders v. Smith*, 245 Ga. App. 323, 324 (1) (537 SE2d 153) (2000).
[2] Id. at 324-325.

claim due to the trial court's findings that it knew Copelan owned the six-inch strip of land when it purchased Tracts 6 and 7 and did not change its position because of any representation by Copelan. Nevertheless, THC asserts that it can establish estoppel under the principles set forth in our Supreme Court's decision in *Schreck v. Blun*.[3] We disagree.

In *Schreck*, Blun sold Schreck a parcel of land via a deed that described the southern boundary of the land as "Gwinnett street extended."[4] Both before and after this sale, Blun owned the land denominated as "Gwinnett street extended." After the sale, Schreck sued Blun to enjoin him from putting up gates to restrict Schreck's access to Gwinnett Street. The Supreme Court ruled that Blun was estopped from denying Schreck full access to the street because the deed had stated that Schreck's land abutted the street. "[A] person conveying premises by description in terms bounding them by a street of a specified width, the title to which [the grantor] also owns, ordinarily gives his grantee the right to insist upon the existence and enjoyment of such street."[5] In other words, if the deed shows that the grantee's land borders a right-of-way owned by the grantor, the grantor must give the grantee access to the right-of-way.

In this case, unlike in *Schreck*, the trial court found that Tracts 6 and 7 do *not* abut Club Drive because Copelan retained a six-inch strip between the tracts and the street, and THC does not dispute that finding. Moreover, the court found that THC did not rely on any representation by Copelan in purchasing the tracts. Based on these facts, the trial court correctly concluded that THC did not prove the elements of equitable estoppel.

THC suggests that, in *Schreck*, the court held that a grantee need not prove reliance when his deed shows that his property abuts a right-of-way. While it is true that the court did not address the issue of reliance,[6] that does not mean the court ruled that reliance is irrelevant in an estoppel claim. Here, although the plat attached to THC's deed indicated that Tracts 6 and 7 directly abutted Club Drive and did not show Copelan's six-inch strip, there was evidence that THC knew when it purchased Tracts 6 and 7 that Copelan had retained the strip. In addition, it is undisputed that Copelan was not involved in the sale to THC. In light of this clear evidence of THC's prior knowledge of the six-inch strip and lack of reliance on any rep-

---

[3] 131 Ga. 489 (62 SE 705) (1908).

[4] Id. at 490.

[5] Id. at 491.

[6] The fact section of the opinion states that Schreck alleged and Blun denied that "the purchase was made on the faith that Gwinnett street extended was as represented on the plat attached to the deed." 131 Ga. at 491. However, the opinion does not indicate how, or even if, the trial court resolved this factual dispute.

resentations or concealments by Copelan, THC's deed and incorporated plat did not give it any reasonable expectation that Tracts 6 and 7 would have direct access to Club Drive.

2. THC also argues that, even though Copelan initially held title to the six-inch strip, Greene County has acquired it through prescription. THC further argues that, because its land abuts a public roadway, it is entitled to access to that roadway. However, the elements of prescriptive acquisition have not been met here.

> In order to obtain prescriptive rights over a roadway, the possession must not originate in fraud, must be public, continuous, exclusive, uninterrupted, peaceable, and accompanied by a claim of right. *The use must also be adverse rather than permissive, and in the case of public roads acquired by prescription, public authorities must have either accepted the road or exercised dominion over it.* Lastly, there must have been unlimited public use of the roadway for at least the seven years preceding the claim of prescriptive acquisition.[7]

The undisputed evidence showed that Greene County had not accepted or exercised dominion over the six-inch strip owned by Copelan. The blacktop portion of Club Drive is 26 feet wide, well within the amount of land deeded to Greene County. On either side of the blacktop are curbs and gutters, a portion of which covers the six-inch strips retained by Copelan. But these curbs and gutters were not constructed by the county; they were commissioned and paid for by LP, with the express knowledge and consent of Copelan. Copelan testified that he agreed to the construction of the curbs and gutters because they would make the Harbor Club development look "a lot neater, a lot nicer."

Moreover, it is undisputed that although Greene County repaved the blacktop portion of Club Drive in 1999, it has never performed any repairs or maintenance on the curbs and gutters. THC points out that the county manager testified that no work has been needed on the curbs and gutters. Nevertheless, there was no evidence that the county considers the maintenance of the curbs and gutters to be its responsibility or that it would perform any repairs should they become necessary. Because the curbs and gutters were privately installed for aesthetic reasons and have not been maintained by Greene County, we cannot conclude that the county has accepted or exercised dominion over them.

Even if the county had accepted or exercised dominion over the

---

[7] (Footnotes omitted; emphasis supplied.) *Chandler v. Robinson*, 269 Ga. 881, 883 (2) (506 SE2d 121) (1998); see also OCGA § 32-3-3 (c).

curbs and gutters, the evidence showed that any possession of the curbs and gutters by the county was permissive, not adverse to Copelan. Copelan consented to the construction of the curbs and gutters on his property. There was no evidence that the county ever gave him notice that it was asserting any claim adverse to his right of ownership.[8]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 24, 2002.

*Blasingame, Burch, Garrard, Bryant & Ashley, J. Ralph Beaird, Richard W. Schmidt, Christopher G. Conley*, for appellant.
*Adams & Ford, Francis N. Ford*, for appellee.

---

[8] See *McClung v. Schulte*, 214 Ga. 426, 429 (105 SE2d 225) (1958) (no adverse possession where owner gave permission for encroachment and plaintiff never gave owner notice of any adverse claim).