S06A0998. SHEARIN et al. v. WAYNE DAVIS & CO., P.C. et al.

(637 SE2d 679)

BENHAM, Justice.

This appeal involves the laws pursuant to which governmental bodies acquire a roadway by prescription. The unpaved roadway in question is located in Paulding County and is known variously as Rutledge Road and Graves Mountain Road. Appellees are persons whose property is crossed by the road or is adjacent to the road. They brought suit against appellants, members of the Paulding County Board of Commissioners (hereinafter "the County"), seeking a writ of mandamus requiring the County to maintain the road. After a hearing, the trial court issued a judgment granting the writ. In doing so, it held a governmental body may obtain prescriptive title to a road in either of two ways: pursuant to the provisions of OCGA § 44-5-163[1] by possessing the road for a period of 20 years while meeting the requirements of OCGA § 44-5-161,[2] or pursuant to OCGA § 32-3-3 (c),[3] which requires unlimited public use of the road for the preceding seven years or more. The trial court based the grant of the writ on its holding that the evidence established title had been acquired by the County pursuant to OCGA §§ 44-5-161 and 44-5-163 and, since the road had not been abandoned pursuant to OCGA § 32-7-2 (b) (1), appellees were entitled to mandamus relief.

This appeal is from that order, but the County does not challenge on appeal the trial court's factual findings or its holdings that the elements of prescriptive acquisition pursuant to OCGA §§ 44-5-161 and 44-5-163 had been met and that the road had not been formally

---

[1] OCGA § 44-5-163. Adverse possession for 20 years confers title
Possession of real property in conformance with the requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170.

[2] OCGA § 44-5-161. Adverse possession; effect of permissive possession
(a) In order for possession to be the foundation of prescriptive title, it:
(1) Must be in the right of the possessor and not of another;
(2) Must not have originated in fraud except as provided in Code Section 44-5-162;
(3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and
(4) Must be accompanied by a claim of right.
(b) Permissive possession cannot be the foundation of a prescription until an adverse claim and actual notice to the other party.

[3] OCGA § 32-3-3. Acquisition of property by devise, exchange, prescription, or dedication; acquisition by county or municipality on behalf of department
. . . (c) Notwithstanding Code Section 44-5-163, any state agency, county, or municipality is authorized to acquire by prescription and to incorporate into its system of public roads any road on private land which has come to be a public road by the exercise of unlimited public use for the preceding seven years or more.

abandoned.[4] Instead, the County contends the two methods of prescription named by the trial court are not two methods, either of which would result in prescription, but are two parts of the only method. That is, the County argues appellees would have to show not only that the County possessed the road for 20 years in conformance with the requirements of OCGA § 44-5-161, but also that, pursuant to OCGA § 32-3-3 (c), the road has come to be a public road by the exercise of unlimited public use for the preceding seven years or more. Given the absence of a challenge to the trial court's holdings regarding OCGA §§ 44-5-161 and 44-5-163, resolution of the issue raised by the County will be dispositive of this appeal.

The method set forth in OCGA § 44-5-163, which by its terms applies to everyone and not just governments, has been recognized for many years in Georgia as a way by which a road may become a public road. See *Dunaway v. Windsor*, 197 Ga. 705, 710-711 (30 SE2d 627) (1944); *Savannah, F. & W. Ry. Co. v. Gill*, 118 Ga. 737 (6) (45 SE 623) (1903). By contrast, the method set out in OCGA § 32-3-3 (c) first appeared in our Code in 1973 when the General Assembly repealed Title 95 of the Georgia Code of 1933 and enacted in its place Title 95A. Ga. Laws 1973, pp. 947, 1008. The opening words of OCGA § 32-3-3 (c), "Notwithstanding Code Section 44-5-163, . . ." suggest the new section was intended to provide a more expeditious and less burdensome alternative means by which a governmental body could acquire a road by prescription, and was not intended to add another requirement to be met in addition to those in OCGA §§ 44-5-161 and 44-5-163. The word "notwithstanding" means "without prevention or obstruction from" or "in spite of." Webster's Third New International Dictionary (1976), p. 1545. Thus, the plain language of OCGA § 32-3-3 (c) means that, without any obstruction from OCGA § 44-5-163, a county may acquire title to a road in seven years if the requirements of OCGA § 32-3-3 (c) are met. Yet, the dissents argue that a county must satisfy the requirements of both OCGA § 44-5-163 and § 32-3-3 (c) before it may acquire title to a road by prescription. Under the dissents' interpretation, if a private road has had unlimited public use for seven years, a county still cannot acquire title to the road until another thirteen years have gone by and the requirements of OCGA §§ 44-5-161 and 44-5-163 are satisfied as well.

Notwithstanding the apparent distinction between the two methods of prescriptive acquisition of roadways, the County's argument is

---

[4] As to the legal correctness of those holdings, see *Jordan v. Way*, 235 Ga. 496, 499 (4) (220 SE2d 258) (1975), and *McDilda v. Bd. of Commrs. of Bulloch County*, 230 Ga. App. 530 (1) (497 SE2d 25) (1998).

supported by language in this Court's decision in *Chandler v. Robinson,* 269 Ga. 881 (2) (506 SE2d 121) (1998). In that case, this Court combined the provisions of the two statutes in stating the requirements for a governmental body to acquire a roadway by prescription. However, after having stated the requirements as a single list, the opinion in *Chandler* resolves the issue in two ways, first by applying OCGA § 32-3-3 (c) and ruling that the fact the road was blocked for ten years prior to the claim of prescription prevented prescriptive acquisition pursuant to that Code section, and then by applying the requirements of OCGA §§ 44-5-161 and 44-5-163 and holding that since the previous use of the roadway was permissive, not adverse, there could be no prescriptive acquisition by that method. Since failure under either of the two statutory procedures would have sufficed to resolve the issue if they were both part of a single method, the separate treatment given the procedures in *Chandler* indicates that although they were listed together, they were not considered by this Court to be part of a single procedure. Furthermore, reading *Chandler* as urged by the County and the dissents to require compliance with both statutory procedures in every case would lead to the absurd result in this case of the County obtaining prescriptive title to the roadway in the 1950s and then having that title vanish in 1973 when OCGA § 32-3-3 was first enacted.

Upon consideration of the language of OCGA § 32-3-3 (c) and the treatment of the two statutory procedures in *Chandler,* we conclude the combination of the requirements of OCGA §§ 44-5-161 and 44-5-163 and OCGA § 32-3-3 (c) in *Chandler* was inadvertent. The two statutory procedures are not, as the County argues here, a single method. Accordingly, we disapprove the portion of the second division of *Chandler* combining the two methods and now hold the two statutory methods are separate and distinct.[5]

The argument in Justice Carley's dissent that the separate analyses in *Chandler* show thorough treatment rather than application of two separate principles ignores the fact that after an issue is resolved in an appellate opinion, subsequent analysis on another theory amounts to an advisory opinion or mere dicta. Moreover, that dissent's presentation of the facts omits that the requirements for prescription with regard to the road involved in this case were

---

[5] We note that the result in *Chandler v. Robinson,* supra, would have been no different had the two methods not been listed together since, as recognized above, the opinion in that case resolved the issue of prescription separately under each of the two methods. *Irwin County v. Owens,* 256 Ga. App. 359 (2) (b) (568 SE2d 578) (2002), and *Harbor Co. v. Copelan,* 256 Ga. App. 79 (2) (567 SE2d 723) (2002), the two decisions of the Court of Appeals which quote the disapproved language in *Chandler* and are, therefore, also disapproved with regard to that language, would likewise be unchanged since neither applied the requirements of OCGA § 32-3-3 (c).

completed in the 1950s, at a time when the evidence shows the County was actively maintaining the road. Both dissents overlook the illogic in arguing that a roadway acquired by prescription pursuant to the predecessor of OCGA §§ 44-5-161 and 44-5-163 almost 20 years before OCGA § 32-3-3 was enacted must be obtained again because the two statutes were inadvertently combined in an appellate opinion. If the dissents are correct in their assertion that enactment of a new requirement for obtaining title by prescription can operate to divest title established 20 years earlier by compliance with existing law, every roadway that has ever been acquired by prescription is subject to divestment at the whim of the legislature. The suggestion in Justice Melton's dissent that the County may not have acquired prescriptive title to the roadway conflicts with the undisputed evidence in the record of this case, unchallenged on appeal by the County. Finally, in urging that a county's failure to meet its obligation to maintain public roads is an acceptable method of abandoning a roadway, Justice Carley's dissent ignores the precedent of *McDilda v. Bd. of Commrs. of Bulloch County*, 230 Ga. App. 530 (1) (497 SE2d 25) (1998), cited earlier herein in footnote 4, and encourages counties to disregard their public duty.

As noted above, separating the two methods is dispositive of this appeal. Since the trial court's finding of prescriptive acquisition and non-abandonment are not challenged and we have held compliance with OCGA § 32-3-3 (c) need not be shown when a roadway is otherwise acquired by prescription, the trial court's judgment must be affirmed.

*Judgment affirmed. All the Justices concur, except Carley and Melton, JJ., who dissent.*

CARLEY, Justice, dissenting.

The dispositive issue in this case is whether OCGA §§ 32-3-3 (c) and 44-5-161 provide for two completely separate and distinct methods by which a governmental body can obtain prescriptive title to a road, or whether those two provisions are in pari materia and, when read together, set forth the necessary elements of a single method for doing so. The trial court held that the statutes authorize alternative methods, the satisfaction of the requirements of either of which will result in prescriptive title in the governmental entity. Today, a majority of this Court affirms that ruling, concluding on p. 387 that "[t]he two statutory procedures are not, as the County argues here, a single method." I disagree with that conclusion, and believe that this Court's binding precedent demonstrates that compliance with the requirements of both OCGA § 32-3-3 (c) and § 44-5-161 is necessary before a governmental body obtains prescriptive title to a road. Therefore, I dissent.

Appellees sought issuance of a writ of mandamus against the Paulding County Board of Commissioners (County), seeking to compel maintenance of a roadway that they asserted the County had maintained from 1935 until the mid-1970's. The County denied ownership and responsibility for maintenance of the road. The case came on for a hearing where, in addition to evidence showing that the County had not maintained the road for the preceding 30-year period, there was evidence showing that the road had not become "a public road by the exercise of unlimited public use for the preceding seven years or more," in accordance with OCGA § 32-3-3 (c). Nevertheless, the trial court granted the writ, concluding that, regardless of OCGA § 32-3-3 (c), the County acquired prescriptive title pursuant to OCGA § 44-5-161 by virtue of its possession and maintenance of the road for at least a 20-year period after 1935.

The County appeals, asserting that Appellees were not entitled to relief simply by showing compliance with OCGA § 44-5-161. It urges that they must show satisfaction of the requirements of OCGA § 32-3-3 (c) as well. As the majority concedes on pp. 386-387,

> the County's argument is supported by language in this Court's decision in *Chandler v. Robinson*, 269 Ga. 881 (2) (506 SE2d 121) (1998). In that case, this Court combined the provisions of the two statutes in stating the requirements for a governmental body to acquire a roadway by prescription.

Thus, the issue raised by this case already has been addressed in and resolved by *Chandler*, which construed OCGA §§ 32-3-3 (c) and 44-5-161 as setting forth, in combination, the constituent elements of a single method by which a governmental entity obtains prescriptive title to a road.

> In order to obtain prescriptive rights over a roadway, the possession must not originate in fraud, must be public, continuous, exclusive, uninterrupted, peaceable, and accompanied by a claim of right. [Cit.] The use must also be adverse rather than permissive, and in the case of public roads acquired by prescription, public authorities must have either accepted the road or exercised dominion over it. [Cit.] *Lastly*, there must have been unlimited public use of the roadway for at least the seven years preceding the claim of prescriptive acquisition. *OCGA § 32-3-3 (c)*. (Emphasis supplied.)

*Chandler v. Robinson*, supra at 883 (2).

The doctrine of stare decisis

is more compelling in cases involving the interpretation of a statute. "Once the court interprets the statute 'the interpretation . . . has become an integral part of the statute.' [Cits.] This having been done, (over a long period of history) any subsequent 'reinterpretation' would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute."

*Mitchell v. State*, 239 Ga. 3, 6 (2) (235 SE2d 509) (1977). Since *Chandler* was decided in 1998, the General Assembly has not amended OCGA § 32-3-3 or § 44-5-161 so as to provide that those provisions establish separate and distinct methods pursuant to which a governmental body obtains prescriptive title to a road. Thus, I submit that the majority has, in effect, today rewritten the statutes so as to achieve a result that is inconsistent with the clear legislative intent.

The majority attempts to evade application of the holding in *Chandler* by noting on p. 387 that,

after having stated the requirements as a single list, the opinion in [that case] resolves the issue in two ways, first by applying OCGA § 32-3-3 (c) . . . , and then by applying the requirements of OCGA §§ 44-5-161 and 44-5-163 . . . . Since failure under either of the two statutory procedures would have sufficed to resolve the issue if they were both part of a single method, the separate treatment given the procedures in *Chandler* indicates that although they were listed together, they were not considered by this Court to be part of a single procedure.

I disagree with this analysis, and believe that the majority mistakenly cites the thoroughness of this Court's disposition of *Chandler* as support for misinterpreting the holding of that case. It is true that, because both OCGA § 32-3-3 (c) and § 44-5-161 are parts of a single method, a failure to comply with any one of the various elements set forth in either would have been fatal to prescriptive title. However, it is equally true that, in any case where there was a failure to comply with more than one element, an appellate court would be free to discuss all of those failures and need not limit itself to reliance only on one. Thus, the fact that *Chandler* noted that there was a lack of compliance with both OCGA § 32-3-3 (c) and § 44-5-161 does not indicate that those statutes provide alternative methods by which a governmental body can acquire prescriptive title to a road. It merely signifies that there were multiple bases for the holding in *Chandler* that prescriptive title to the roadway had not been obtained under the single procedure for a governmental entity to do so.

The facts of this case demonstrate why *Chandler* correctly held that OCGA §§ 32-3-3 (c) and 44-5-161 must be construed in pari materia. It is unfair to require that a governmental entity resume responsibility for maintenance of a road after a 30-year period has elapsed, unless it is also established that the road has been subject to the exercise of unlimited public use for the preceding seven-year period or longer. Thus, the applicable law is clear. In order for a governmental body to obtain prescriptive rights over a roadway, there must be compliance with OCGA § 44-5-161 and, in accordance with OCGA § 32-3-3 (c), "there must have been unlimited public use of the roadway for at least the seven years preceding the claim of prescriptive acquisition. [Cit.]" *Chandler v. Robinson*, supra at 883 (2). Here, the trial court found satisfaction of the requirements of OCGA § 44-5-161, but also concluded that there had been no compliance with the requirements of OCGA § 32-3-3 (c). Accordingly, the trial court erred in holding that the County acquired prescriptive title to the road and erred in issuing the writ of mandamus requiring the County to maintain it.

I am authorized to state that Justice Melton joins in this dissent.

MELTON, Justice, dissenting.

While I fully join in Justice Carley's dissent, I write separately to emphasize that the majority's reading of OCGA §§ 32-3-3 (c), 44-5-161, and 44-5-163 results in a holding that is contrary to the clear framework that has been created by the three statutes.

Pursuant to OCGA § 44-5-161 (a),

[i]n order for possession to be the foundation of prescriptive title, it: (1) Must be in the right of the possessor and not of another; (2) Must not have originated in fraud except as provided in Code Section 44-5-162; (3) Must be public, continuous, exclusive, uninterrupted, and peaceable; and (4) Must be accompanied by a claim of right.

This Code section works in conjunction with OCGA § 44-5-163, which provides that "[p]ossession of real property in conformance with the [aforementioned] requirements of Code Section 44-5-161 for a period of 20 years shall confer good title by prescription to the property against everyone except the state and those persons laboring under the disabilities stated in Code Section 44-5-170."

OCGA § 32-3-3 (c) adds a seven-year "public use" requirement to the statutory framework regarding prescriptive title. Specifically, before a county can be said to have prescriptive title to a road on private land, the road in question must "come to be a public road by

the exercise of unlimited public use for the preceding seven years or more." Id.; see also *Chandler v. Robinson*, 269 Ga. 881 (2) (506 SE2d 121) (1998).

Here, pretermitting the question whether the County acquired prescriptive title prior to the 1970's,[6] it is undisputed that there has not been unlimited public use of the road for at least the last seven years as required by OCGA § 32-3-3 (c). Thus, as a matter of law, the County does not have prescriptive title to the land today.

The seven-year public use requirement of OCGA § 32-3-3 (c) was designed to prevent the very situation that the majority has endorsed here, which is to allow a private individual to claim, more than thirty years after a property is no longer in use by the public or maintained by the County, that the County obtained and still has prescriptive title to the property. Indeed, such a long delay makes it virtually impossible to address the critical question of what, if anything, the County did in the past to make "a claim of right" to the land that would have established prescriptive title in the first place. Further, because OCGA § 32-3-3 (c) makes clear that the lack of unlimited public use of the land for at least seven years eliminates any prospect of prescriptive title, it is of no consequence that the County did not formally abandon the property pursuant to OCGA § 32-7-2.

Accordingly, because it has not been established that the County had prescriptive title to the road at issue here, I would reverse the trial court's issuance of mandamus requiring the County to maintain it.

I am authorized to state that Justice Carley joins in this dissent.

DECIDED NOVEMBER 20, 2006 —
RECONSIDERATION DENIED DECEMBER 15, 2006.

---

[6] Tellingly, the County has not made any present claim to the road at issue here, and it is unclear when, if ever, the County made an express claim to the road in the past that would support an assertion of prescriptive title. See OCGA § 44-5-161 (a) (4) (possession "[m]ust be accompanied by a claim of right" to form basis for prescriptive title); *Coleman v. Coleman*, 265 Ga. 568 (459 SE2d 166) (1995) (party who did not give actual notice of adverse claim could not establish prescriptive title). To the contrary, appellees are attempting to *force* prescriptive title onto the County in an effort to make it maintain a trail located on private land. In addition, OCGA § 32-3-3 (c) was passed in 1973, and if, as appellees contend, the County has done nothing to maintain the road since "the mid 1970's," we would still be left with the questions (1) whether the County made an express claim to the land prior to the passage of OCGA § 32-3-3 and (2) even if the County had made an express claim to the land, whether the additional seven-year public use requirement of OCGA § 32-3-3 would have been met at the time that the statute was passed.

*Vinson, Talley, Richardson & Cable, Noelani G. Skipper, James J. Phillips*, for appellants.
*Glen E. Stinson*, for appellees.