### A11A0383. OFFICE DEPOT, INC. v. THE DISTRICT AT HOWELL MILL, LLC et al.
#### (710 SE2d 685)

MCFADDEN, Judge.

Office Depot, Inc. sued its landlords, The District at Howell Mill, LLC (the "District") and ELPF Howell Mill, LLC ("ELPF") (collectively, "landlords"), for breach of the exclusive-use provision of a commercial lease agreement. It also asked for a declaratory judg-

ment regarding its obligation to pay rent under the lease and/or its authority to terminate the agreement. The landlords counterclaimed for past-due rent, attorney fees, and a declaration that they did not breach the lease. Following discovery, the parties filed cross-motions for summary judgment, and the trial court granted summary judgment to the landlords on all claims.

Office Depot appeals, asserting that questions of fact remain as to breach, that regardless of whether a breach occurred, it is entitled to terminate the lease, and that the trial court erred in awarding attorney fees. Office Depot is precluded from claiming a breach by the terms of an estoppel certificate, which it executed at the time the District sold the shopping center to ELPF and upon which the landlords reasonably relied. Because the landlords did not breach the agreement, Office Depot is not entitled to exercise the lease's termination clause. Because the lease provides for an award of reasonable attorney fees to the party prevailing in litigation, the trial court did not err in awarding attorney fees to the landlords. Accordingly, we affirm.

Summary judgment is appropriate when the evidence, viewed favorably to the nonmoving party, demonstrates that no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See OCGA § 9-11-56 (c). Many of the underlying facts in this case are undisputed. On December 27, 2005, Office Depot leased commercial space in a shopping center located on Howell Mill Road in Atlanta. Pursuant to the lease agreement, which at that point was between Office Depot as tenant and the District as landlord, the District agreed to an exclusive-use provision or "Landlord's Leasing Covenant" that prohibited it from entering into another "lease and/or operating agreement with any person or entity whose primary business, at the time of such lease or operating agreement is executed is the sale, leasing, distribution or display of . . . school supplies."

Approximately 18 months later, the District leased other property in the shopping center to The School Box. According to its lease, The School Box was to use the premises for

> [t]he display and sale at retail of educational supplies for school and home, including, but not limited to student workbook, teacher resource books, home school curriculum, children's literature, teaching materials in all subjects, classroom decorations, educational toys and games, art and crafts supplies, school supplies, children's music and videos, software, classroom furniture, inspirational teaching materials and other products normally purchased by schools,

> teachers and parents of school age children, and for no other use.

The School Box store opened in November 2006 directly across the parking lot from Office Depot.

In May 2007, ELPF agreed to purchase a majority interest in the shopping center from the District. Before entering into that agreement, ELPF asked for an "estoppel certificate" from each shopping center tenant regarding the tenant's current lease. Office Depot executed its certificate on April 24, 2007, stating, among other things, that "[t]o Tenant's knowledge, Landlord is not in default in the performance or observance of any of its obligations under any terms or provisions of the Lease." The purchase transaction closed in June 2007, and the District assigned ELPF a portion of its interest in the tenant leases.

Office Depot subsequently informed the District that the lease to The School Box violated the exclusive-use provision of its lease agreement. By letter dated December 6, 2007, Office Depot gave notice that within 60 days it would commence paying reduced "Alternative Rent" as defined under the lease. Neither the District nor ELPF responded, and Office Depot began paying reduced rent in February 2008.

Over one year later, in May 2009, Office Depot filed its petition for declaratory relief and damages against the District and ELPF. Office Depot sought a declaration that the landlords had breached the exclusive-use provision in the lease agreement, authorizing it to pay reduced rent or terminate the lease. It also requested damages flowing from the breach. The landlords counterclaimed for nonpayment of rent and attorney fees, and the parties filed cross-motions for summary judgment.

Following a hearing, the trial court entered summary judgment for the landlords. It found that, as a matter of law, Office Depot was estopped by its April 2007 estoppel certificate from claiming breach. Concluding that the landlords were not in default, it awarded them past-due rent, interest, attorney fees, and litigation expenses. This appeal followed.

1. The trial court first determined that the April 24, 2007 estoppel certificate precluded Office Depot's breach of contract claim. We agree. Georgia law recognizes "on grounds of public policy and good faith, the potential estoppel effect that can result from a tenant's execution of [an estoppel] certificate." (Citation and punctuation omitted.) *Virginia Highland Assoc. v. Allen*, 174 Ga. App. 706, 709 (2) (330 SE2d 892) (1985). As we have explained, "[a]dmissions which have been acted on by others[ ] are conclusive against the party making them, in all cases, between him and the person

whose conduct he has thus influenced." (Emphasis omitted.) Id. at 708.

At the time Office Depot executed its certificate, The School Box had been in operation for several months, and Office Depot officials had considered whether presence of the store violated its lease. Nevertheless, Office Depot represented to the landlords that no default had occurred. The record further shows that the landlords — and in particular, ELPF — relied on the estoppel certificate in closing the purchase transaction. On appeal, Office Depot notes that ELPF's investment committee approved the acquisition in late April 2007, before receiving the certificate. A representative from ELPF's investment advisor testified, however, that the advisor required an estoppel certificate from every major tenant in the shopping center. As part of the advisor's due diligence, the representative also spoke with the Office Depot store manager, who stated that the store had no problems with the lease or landlord. The investment committee approved the acquisition based on that representation, then sought the estoppel certificate to confirm that there were, in fact, no issues with the lease. Testimony also established that if the estoppel certificate had revealed a possible violation of the Office Depot lease, the sales transaction would not have proceeded as planned. Office Depot has not offered any evidence contradicting this testimony that the transaction closed in reliance on the estoppel certificate.

Alternatively, Office Depot argues that any reliance was unreasonable because the landlords *knew* that The School Box lease violated Office Depot's exclusive-use provision. The record, however, shows otherwise.

Prior to the sale, a representative from ELPF's investment advisor visited The School Box store, spoke with its manager, and reviewed The School Box lease, which listed the display and sale of school supplies as just one of many ways in which The School Box was to use the space. As noted above, an interview with Office Depot's store manager also revealed no complaints about The School Box. Based on this investigation, ELPF determined that The School Box was not in the "primary business" of displaying or selling school supplies and that its presence in the shopping center did not violate Office Depot's exclusive-use provision. The District reached a similar conclusion when it originally entered The School Box lease.

Office Depot has pointed to no evidence that the landlords' judgment in this regard was unreasonable or that the landlords knew Office Depot's lease had been breached. Accordingly, no issues of fact remain as to the reasonableness of the reliance here. Compare *Mark-It Place Foods v. New Plan Excel Realty Trust*, 804 NE2d 979, 1001 (Ohio App. 2004) (evidence that new landlord knew about breach raised question of fact regarding reasonable reliance on

estoppel certificate); *Won's Cards v. Samsondale/Haverstraw Equities*, 566 NYS2d 412, 417 (1991) (same); *KPW Assoc. v. S. S. Kresge Co.*, 535 So2d 1173, 1181 (La. App. 1988) (shopping center purchaser not justified in relying on tenant's estoppel certificate given knowledge of significant problems with parking lot). Office Depot, therefore, has not raised a question of fact as to the reasonableness of the landlords' reliance.

Despite the presence of The School Box store in the shopping center, Office Depot executed an estoppel certificate stating that it knew of no defaults in its lease. The landlords reasonably relied on that statement in closing the sales transaction. Under these circumstances, Office Depot is estopped from claiming that the landlords violated the exclusive-use provision by leasing space to The School Box. See *Virginia Highland Assoc.*, supra at 709-710. The trial court, therefore, properly granted summary judgment to the landlords on the breach of contract claim.

2. Office Depot further argues that even if no breach occurred, it is authorized to terminate the lease. In support, it cites Section 11.6 of the lease, which provides:

> Breach of Landlord's Leasing Covenant. In the event Landlord violates "Landlord's Leasing Covenant" [the exclusive-use provision], Tenant shall have the right beginning sixty (60) days following written notice alleging such violation . . . to pay Alternative Rent . . . until such time as landlord cures such violation. *If landlord fails to commence and diligently pursue a judicial action to contest Tenant's assertion of such a violation within six (6) months* of such assertion, then in addition to its other rights at law or in equity, *Tenant may terminate this Lease* by delivering written notice of such election to Landlord.

(Emphasis supplied.)

Without dispute, the landlords did not bring a judicial action to contest Office Depot's claim of breach within six months of the allegation. Office Depot thus argued below — and now claims on appeal — that it is entitled to terminate the lease.

"Construction of a written contract is a question of law for the trial court based on the intent of the parties as set forth in the contract, which question we review de novo." *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 163-164 (1) (a) (640 SE2d 719) (2007). When the language of the contract is clear and unambiguous, we enforce those terms as written, and we will not look to matters outside of the contract. Id. at 164. Moreover, " '[a] contract is not ambiguous, even though difficult to construe, unless and until an application of the

pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties.' " *Giles v. Nationwide Mutual Fire Ins. Co.*, 199 Ga. App. 483, 484 (1) (405 SE2d 112) (1991). Those rules of interpretation require us, among other things, to construe a contract clause in conjunction with its heading to determine the parties' intent. See *Donchi*, supra at 164; *Giles*, supra.

Office Depot's termination claim focuses on the "assertion of a violation" language in the second sentence of Section 11.6. It argues that even though a breach may not have occurred, it asserted that a breach existed in December 2007, triggering the six-month deadline for the landlords to commence a judicial action. By its clear terms, however, Section 11.6 sets forth remedies available *following a breach*. The paragraph is entitled "Breach of Landlord's Leasing Covenant," and the first sentence authorizes the tenant to pay alternative rent "in the event" of a breach and after proper notice to the landlord. The second sentence then gives the tenant the additional right to terminate if the landlord fails to commence a timely legal action to dispute the assertion of "such a violation," referring back to the breach discussed in the first sentence.

At base, Office Depot argues that *any* breach allegation — no matter how wrong or far-fetched — triggers the termination right. A contract, however, must be read reasonably, in its entirety, and in a way that does not lead to an absurd result. See *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867, 869 (578 SE2d 470) (2003); *Tudor v. American Employers Ins. Co.*, 121 Ga. App. 240, 242 (1) (173 SE2d 403) (1970). The construction suggested by Office Depot brings the termination right into play regardless of the merit or absurdity of the breach claim. Section 11.6 cannot be reasonably construed in this manner.

Read in its entirety and in conjunction with its title, the paragraph allows a tenant to terminate its lease if the landlord fails to commence a judicial proceeding to contest a breach allegation when there is, in fact, a breach. Simply put, the termination right does not arise if there is no breach. And as we have already found, the landlords are entitled to summary judgment on Office Depot's breach claim. Accordingly, Office Depot cannot terminate pursuant to Section 11.6.

3. Finally, Office Depot argues that the trial court erred in awarding attorney fees and expenses to the landlords. In its order, the trial court concluded that the landlords were entitled to recover fees and expenses, but it made no finding as to the amount of the award. Instead, it directed that a hearing be held in the future at which the landlords would be required to "present proof of these items."

We find no error. Pursuant to Office Depot's lease agreement, the "prevailing party" in any litigation to enforce a right or collect sums due under the lease may recover reasonable attorney fees and litigation expenses. The trial court awarded fees and expenses after concluding that the landlords were the prevailing parties here. Although Office Depot challenges this designation, we have already determined that the trial court properly granted summary judgment to the landlords on the breach and termination claims. Office Depot also has not demonstrated the trial court erred in awarding the landlords past-due rent. The landlords clearly prevailed in this litigation. See *Realty Lenders v. Levine*, 286 Ga. App. 326, 330 (2) (649 SE2d 333) (2007).

Office Depot further argues that OCGA § 13-1-11 limits the attorney fees and litigation expenses that may be recovered by the landlords. The trial court, however, has not determined the amount of fees and expenses to be awarded. It deferred that question for a future hearing, at which the parties can present evidence and argument. Accordingly, because the trial court has not yet ruled on the amount of fees and expenses to be awarded, we will not address the OCGA § 13-1-11 issue or "render an advisory opinion thereon." *Sosebee v. McCrimmon*, 228 Ga. App. 705, 710 (2) (492 SE2d 584) (1997). See also *Tackett v. Ga. Dept. of Corrections*, 304 Ga. App. 310, 313 (2) (696 SE2d 359) (2010) (" 'This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it.' ").

*Judgment affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED MAY 6, 2011.

*Shapiro, Fussell, Wedge & Martin, Robert B. Wedge*, for appellant.

*Eric C. Lang, Patricia F. Ammari, William J. Dawkins*, for appellees.