### A11A1496. FUNDUS AMERICA (ATLANTA) LIMITED PARTNERSHIP v. RHOC CONSOLIDATION, LLC et al.
(720 SE2d 176)

MIKELL, Judge.

Commercial landlord, Fundus America (Atlanta) Limited Partnership ("Fundus"), sued tenants, RHOC Consolidation LLC ("RHOC") and its parent company Marriott International, Inc. ("Marriott") (collectively "appellees"), for a writ of possession, breach of contract, and attorney fees, arising from the assignment of a lease for a hotel in downtown Atlanta. Appellees filed counterclaims for a declaratory judgment that appellees were not in violation of the lease, breach of lease, negligent misrepresentation and attorney fees. Both parties moved for summary judgment after discovery. Following a hearing, the trial court granted the motions in favor of appellees, and Fundus appeals. Finding no error, we affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A defendant may establish entitlement to summary judgment either by "presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support [those] claims."[2] If the defendant establishes those requirements, the plaintiff must point to specific evidence giving rise to a triable issue.[3] When reviewing the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and the evidence,[4] and we view the evidence in the light most favorable to the nonmovant. "When a question of law is at issue . . . we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[5]

So viewed, the evidence shows that Fundus is the owner of a

---

[1] OCGA § 9-11-56 (c); *Kaplan v. City of Sandy Springs*, 286 Ga. 559, 560 (1) (690 SE2d 395) (2010).

[2] (Citation omitted.) *Oglethorpe Dev. Group v. Coleman*, 271 Ga. 173, 173 (1) (516 SE2d 531) (1999).

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[4] *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 286 Ga. App. 193, 194 (648 SE2d 701) (2007).

[5] (Citation and punctuation omitted.) Id.

hotel property located in downtown Atlanta (the "Hotel"). After acquiring the property in 1990, Fundus completed a multi-million dollar renovation of the Hotel. In October 1990, Fundus leased the Hotel to Penta Hotels Georgia, Inc. ("Penta"), pursuant to a lease with a 20-year term (the "Lease"). Penta had multiple obligations under the Lease, including that it use the Hotel solely as a "first class hotel," keep the Hotel in good repair, pay for all capital improvements and repairs needed, keep the Hotel in compliance with all government regulations, and not commit waste. The management and operations of the Hotel switched hands several times until Penta engaged Renaissance to manage the Hotel. Marriott acquired the Renaissance brand in 1997, and operated the Hotel under that brand until 2005. In 2005, Penta's[6] obligations under the Lease were assigned to Marriott's wholly-owned subsidiary, RHOC. In connection with this assignment, Marriott executed an Unconditional Guaranty of Payment and Performance (the "Marriott Guaranty") and Fundus executed an estoppel certificate[7] (the "Estoppel Certificate") asserting that the Lease had not been breached by prior tenants.

Less than two years after the assignment, the parties began to negotiate for an early termination of the Lease. During these negotiations, Fundus commissioned an inspection of the Hotel by Herbert Mascha and Michael Regner ("M&R Report") to determine the condition of the Hotel. The M&R Report identified $35 million worth of repairs, improvements and renovations needed to bring the Hotel up to the status of a "first class hotel," as required by the Lease. Fundus sent a Notice of Default under the Lease to Marriott based on the M&R Report outlining the alleged breaches, and Marriott rejected these findings. Fundus then terminated the Lease, demanded that Marriott vacate the Hotel, and filed this lawsuit. The trial court granted summary judgment in favor of appellees, holding that Fundus's claims were barred by the execution of the estoppel certificate and that the term "first class hotel" was unenforceable as a matter of law.

1. Fundus argues that the trial court erred in granting summary judgment to appellees on the theory that Fundus's breach of contract claims against appellees were foreclosed by the execution of the

---

[6] Then operating under the name "HPI Georgia, Inc."

[7] An estoppel certificate is

[a] signed statement by a party . . . certifying for another's benefit that certain facts are correct, such as that a lease exists, that there are no defaults, and that rent is paid to a certain date. A party's delivery of this statement estops that party from later claiming a different state of facts.

Black's Law Dictionary 572 (7th Ed. 1999).

estoppel certificate. Finding no error, we affirm.

The contract memorializing the assignment is comprised of several contemporaneous documents signed by Fundus and appellees, including a Consent to Assignment, the Assignment and Assumption of Lease, the Marriott Guaranty, and the Estoppel Certificate.[8] The Consent to Assignment contains an integration clause, which provides:

> This Consent, the Marriott Guaranty, the Estoppel Certificates and exhibits hereto constitutes [sic] the entire agreement of the parties concerning the transactions contemplated by this Consent. All prior understandings and agreements among the parties are merged into this Consent, which alone fully and completely expresses their understanding.

In the Marriott Guaranty, Marriott replaced Penta as the guarantor of the lessee's performance under the Lease. Marriott guaranteed "the full and prompt performance of any and all obligations of Assignor and Assignee to Lessor under the Lease" and agreed that its liability extended to "all Obligations of either Assignor or Assignee, as 'Lessee' under the Lease, whether such Obligations arose to [sic], on or after, the Effective Date hereof."

In exchange for the Guaranty, Marriott asked Fundus to execute an Estoppel Certificate assuring that there was no breach or default of the Lease at the time of assignment. Paragraph 2 of the Estoppel Certificate provides the following:

> Landlord has not delivered or received any notices of a breach or a default under the Lease, and to the best knowledge of Landlord, there is no breach or default by Tenant or Landlord under the Lease, nor has any fact, act, event or omission occurred which, with the giving of notice or lapse of time, or both, would constitute a breach or default thereunder. Landlord, and to the best knowledge of Landlord, Tenant, have performed all their obligations under the Lease.

(a) Fundus argues that estoppels are disfavored under Georgia law, and that appellees are required to prove the elements of

---

[8] Georgia law provides that "multiple documents may be considered together as a single contract as long as all the necessary terms are contained in signed contemporaneous writings." (Citation and punctuation omitted.) *Bd. of Regents &c. of Ga. v. Tyson*, 261 Ga. 368, 369 (1) (404 SE2d 557) (1991). OCGA § 24-6-3 (a).

equitable estoppel, including proof of some concealment or false representation, in order to prevail on a motion for summary judgment.[9] None of the cases relied upon by Fundus, however, involves a written estoppel certificate in which a party expressly agreed to be estopped. Georgia law recognizes, "on grounds of public policy and good faith,"[10] that the execution of an estoppel certificate can create an estoppel effect against future claims for damages.[11] In *Virginia Highland Assoc. v. Allen*,[12] this Court reversed the trial court's failure to enforce an estoppel certificate because "[a]dmissions which have been *acted on by others,* are conclusive against the party making them, in all cases, between him and the person whose conduct he has thus influenced."[13] Similarly, this Court in *Office Depot v. The District at Howell Mill*[14] held that Office Depot was precluded from claiming a breach of its lease by the terms of an estoppel certificate it executed at the time the District sold a majority interest in a commercial shopping center to ELPF Howell, LLC, and upon which ELPF Howell, LLC reasonably relied.[15] Neither of these cases included evidence of concealment or false representation.

Accordingly, it follows that a party can agree to be estopped under circumstances that might not otherwise constitute an estoppel under common law, as Fundus has in this case by executing the Consent to Assignment, which incorporated the Estoppel Certificate as part of its contractual terms.

(b) Fundus argues that the Estoppel Certificate does not preclude its claims because appellees were in a better position to know that the Lease had been breached at the time of assignment, and so they could not reasonably rely upon it.

Fundus is a Georgia limited partnership, but almost all of Fundus's limited partners and decision-making representatives reside in Europe. Fundus argues that it had limited knowledge of the Hotel's condition through infrequent visits to the Hotel from Europe and from the annual reports provided by its asset manager, Pruden-

---

[9] The party claiming the benefit of an equitable estoppel must prove that it is "free from fraud in the transaction, must have acted in good faith, and must have exercised reasonable diligence" and that the party against whom the estoppel is sought acted in a manner amounting to fraudulent representation or concealment. (Citation omitted.) *Collins v. Grafton, Inc.*, 263 Ga. 441, 443 (2) (435 SE2d 37) (1993). Accord *Harbor Co. v. Copelan*, 256 Ga. App. 79, 80 (1) (567 SE2d 723) (2002), disapproved on other grounds by *Shearin v. Wayne Davis & Co., P.C.*, 281 Ga. 385, 387, n. 5 (637 SE2d 679) (2006).

[10] (Citation and punctuation omitted.) *Virginia Highland Assoc. v. Allen*, 174 Ga. App. 706, 709 (2) (330 SE2d 892) (1985).

[11] Id.

[12] Id.

[13] (Citation and punctuation omitted; emphasis in original.) Id. at 708 (2).

[14] 309 Ga. App. 525 (710 SE2d 685) (2011).

[15] Id. at 527-529 (1).

tial Real Estate Investors, and that Marriott, who was currently providing the Hotel's management services, was in a better position to know the condition of the Hotel. However, Marriott does not dispute that it had knowledge of the Hotel's condition at the time of assignment. Instead, Marriott argues that it was that very knowledge that led them to insist upon the Estoppel Certificate before it would assume any liability for the Lease. Marriott's representative testified that "[w]e were being asked to step into a tenant position, we simply would not do it, period, without getting an estoppel certificate that said the lease was in full force . . . [and] there were no outstanding breaches."

Although it is a general rule of law that an estoppel cannot result "where both parties have equal knowledge or equal means of knowing the truth[,]"[16] parties can contract around "this rule of law, so as to prevent lack of knowledge of a fact from avoiding . . . estoppel."[17] By executing the Estoppel Certificate and the Consent to Assignment, which specifically provided that appellees "shall have the right to rely on the certifications and representations of Lessor [Fundus] set forth in the Lessor's Lease Estoppel Certificate," Fundus contracted around this common law element of estoppel. Accordingly, appellees are not required to show that they did not have equal knowledge or means to obtain knowledge about the Hotel's condition.

Further, in evaluating whether the Estoppel Certificate can preclude Fundus's claims, we are persuaded by the holding of the Appellate Court of Illinois that "[a] party who executes an estoppel certificate should not be allowed to raise claims of which it knew or should have known at the time the certificate was executed"[18] and that "[a] party who executes an estoppel certificate that there are no defaults is under a duty to inquire and determine, insofar as reasonably possible, what claims exist."[19] Accordingly, Fundus had a duty to make reasonable inquiries into the state of the Hotel prior to executing the Estoppel Certificate and cannot evade such responsibility by qualifying its representation as merely being its "best knowledge."[20] Fundus did not meet this obligation. Fundus admits that it did not conduct an inspection of the Hotel in anticipation of the Lease assignment. Its knowledge of the Hotel's condition was

---

[16] (Citation and punctuation omitted.) *Collins*, supra at 443 (2).

[17] (Citation omitted.) *Sovereign Camp &c. v. Heflin*, 188 Ga. 234, 235 (1) (3 SE2d 559) (1939).

[18] *K's Merchandise Mart v. Northgate Ltd. Partnership*, 359 Ill. App. 3d 1137, 1144 (II) (B) (835 NE2d 965) (2005).

[19] Id.

[20] As stated above, the Estoppel Certificate states:
Landlord has not delivered or received any notices of a breach or a default under the

based upon the annual reports prepared by Prudential, which "contained only a limited section of general updates on Marriott's capital projects at the Hotel and the limited information that Prudential received from its yearly 'walkthrough' of the property with Marriott's employees." Prudential's annual visit to the Hotel was "not a physical inspection of the property," and Prudential "never" conducted such an inspection. An estoppel certificate can be enforceable even if the party signing it did so negligently.[21] Because the law charged Fundus with the knowledge that a reasonable inspection would have uncovered, any dispute over the quality of Fundus's inspections does not give rise to an issue of material fact. Fundus expressly agreed in the assignment contract that appellees "shall have the right to rely" on the Estoppel Certificate, and Fundus cannot avoid that commitment by arguing circumstances that would otherwise give rise to an equitable estoppel.

(c) Fundus contends that the trial court erred in granting summary judgment to appellees because the representations it made in the Estoppel Certificate were "limited and qualified," and thus appellees' reliance upon these admissions was unreasonable.

In support of this argument, Fundus notes that it refused to sign a draft of the Estoppel Certificate containing proposed Paragraph 6, which stated that Fundus was satisfied with improvements made to the Hotel and that the property complied with operating requirements contained in the Lease. Fundus argues that its refusal to sign an assignment with this language is sufficient evidence to put appellees on notice that they might be liable for some existing contractual breaches. However, this argument ignores the contract's integration clause, which provides that the Consent to Assignment (and all its exhibits, including the Estoppel Certificate) "constitutes the entire agreement of the parties" and that "[a]ll prior understandings and agreements among the parties concerning these matters are merged into this Consent." When a contract is unambiguous, intentions not expressed by writing cannot add to or take away from the written instrument and cannot be shown by parol evidence.[22] Accordingly, this Court cannot consider parol evidence to

---

Lease, and *to the best knowledge of Landlord*, there is no breach or default by Tenant or Landlord under the Lease. . . . Landlord and, *to the best knowledge of Landlord*, Tenant, have performed all of their obligations under the Lease.
(Emphasis supplied.)

[21] *Virginia Highland Assoc.*, supra at 709 (2) ("If appellees . . . are not estopped by the unqualified certificate they signed, even if they did so negligently, no prospective landlord would ever be able to rely upon the express declarations given to his predecessor in title by purported tenants in possession").

[22] *Gray v. Dental One Assoc.*, 269 Ga. App. 888, 890 (605 SE2d 366) (2004). Accord *Watson v. Zurich-American Ins. Co.*, 221 Ga. App. 4, 5-6 (1) (470 SE2d 684) (1996).

add to, take from, contradict or vary the assignment contract containing the terms of the Estoppel Certificate.[23]

(d) Based upon the above, we find that although Fundus's claims arising from alleged breaches of the Lease that arose prior to the June 22, 2005 assignment are barred by the Estoppel Certificate, claims for breach of the Lease that arose *after* June 22, 2005 are not barred by the Estoppel Certificate. However, Fundus pointed to no evidence of a post-assignment breach. The trial court concluded the motion for summary judgment hearing by specifically inviting Fundus to identify evidence of any breach that might survive the legal rulings now on appeal, but Fundus failed to do so.[24]

2. Many of Fundus's claims arose from an alleged breach of the Lease requirement that appellees maintain the Hotel as a "first class hotel." Fundus contends that the trial court erred in holding that the phrase "first class hotel" is not an enforceable contract term. Since, however, as we held in Division 1, Fundus's claims for breach of the Lease are precluded by the Estoppel Certificate, this issue has been rendered moot.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED OCTOBER 26, 2011 —
RECONSIDERATION DENIED DECEMBER 1, 2011 ▮

Lease. Fulton State Court. Before Judge Levenson, pro hac vice.

*Alston & Bird, John C. Weitnauer, William C. Massey, Candace N. Smith, Meaghan G. Boyd, RobbinsFreed, Richard L. Robbins, Alexa R. Ross, Jason Alloy*, for appellant.

*Bondurant, Mixson & Elmore, Michael B. Terry, Timothy S. Rigsbee, Ronan P. Doherty*, for appellees.

---

[23] Id. at 6.

[24] See *Locke's Graphic &c. v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007).